[Civ. No. 9466.   Third Dist.   Dec. 15, 1958.]

G. C. RAMEY et al., Appellants, v. RUTH GREENE, Respondent.

James F. Roach for Appellants.

David F. Geis, Carroll F. Byrd and Geis & Byrd for Respondent.

WARNE, J. pro tem.*—This is an action to rescind a contract for the purchase of a certain motel and trailer park because of alleged fraudulent representations and concealment of material facts, failure of consideration and mistake.   The

*Assigned by Chairman of Judicial Council.

trial court found for the defendant seller, and the plaintiffs have appealed.

It appears from the record that the property in question, known as the Traveler's Rest Motel and situated on the outskirts of Willows, California, was purchased by defendant at a foreclosure sale about 11 weeks before the execution of the contract of sale to the plaintiffs. Following the purchase by the defendant of said property, she opened same as a trailer park and motel without a state permit as required by section 18200 of the Health and Safety Code. However, on or about November 21, 1956, she applied for a permit, and in response to her application the Division of Housing, under date of December 5, 1956, mailed her a compliance order in the form of the following letter:

"An inspection by our representative on November 29, 1956, discloses that you are operating your motel and trailer park without a State permit, in violation of the Auto Court, Resort and Motel Act and the State Trailer Park Act.

"Continued operation is detrimental to the welfare of the occupants and constitutes a nuisance as defined in Section 18008 of the Trailer Park Act and Section 18511 of the Motel Act.

"You are hereby directed to vacate the premises forthwith, including the motel units, and remove all trailers therefrom.

"Do not permit further occupancy until this property is brought into compliance with the Health and Safety Code.

"We are returning herewith your U.S. Postal Money Order . . . in the amount of $10.00."

Immediately after receipt of this letter defendant was contacted in person by Mr. Davis of the Division of Housing and told by him that he had not ordered the letter to be sent, and that he thought perhaps Mr. O'Brien had misunderstood his report. He then assured her that if she would commence making the required improvements to place the premises in compliance with the state law, she could continue to operate in the absence of a permit. He informed her that the sewage and electrical facilities were the most immediate hazards and would have to be improved immediately. He did not tell her of all the things he felt needed to be done to the property, nor is there any evidence that he furnished defendant a copy of his report concerning the condition of the premises. Mr. Davis's authority to permit the premises to be operated is not challenged. Defendant did not inform appellants that she had been refused a permit. However, defendant testified

that she told appellants that unless certain repairs and improvements were made, no one would be able to obtain a permit from the State Division of Housing, stating to them, "and that would include me" (defendant). To assure the work being done, there was incorporated in the contract of sale the following provision:

". . . [P]urchasers agree to change and reinstall electric light wires over to the trailer hook-ups on said premises and to raise the electric light wire over the crossing to an elevation of sixteen feet. The purchasers shall also change and reinstall fuse and switch boxes and improve all open leads. Purchasers shall also improve the trailer hook-ups for sanitary purposes."

There is no dispute as to the fact that appellants inspected the property and observed its run down condition and need of extensive repairs. In fact Mr. Ramey, who had had some experience as a carpenter, testified that he was on the property four times prior to the execution of the contract, and that on three of the visits he inspected the premises. However, plaintiffs maintain that respondent fraudulently concealed the fact that she did not have a valid permit to operate the motel, and that she did not inform them that the premises were hazardous and dangerous for human habitation and that such condition was deemed a nuisance. They also maintain there was a failure of consideration since the contract provided that the property was to be used for a motel and trailer court and for no other purpose. The trial court found:

"It is untrue that defendant knew said motel was in a hazardous or dangerous condition for human habitation or that the same was deemed a nuisance by the State of California, Division of Housing.

. . . . . . . . . . . . .

". . . [P]laintiffs also knew that the motel and trailer court in question did not at that time fully comply with said standards and no permit had then been issued for its operation."

The inspector for the State Division of Housing corroborated defendant's testimony that she could continue to operate the motel without a permit if she immediately remedied the most dangerous conditions; i.e., the conditions which we have heretofore mentioned. Consequently, according to defendant's testimony, she assumed the letter from the division was "void." While the letter indicated that the operation of the premises would be detrimental to the welfare of occupants and

constitute a nuisance as defined in section 18008 of the Trailer Park Act and section 18511 of the Motel Act, nevertheless it may be reasonably inferred that the division did not actually believe that the property in question was a nuisance or any great hazard. Otherwise it is not reasonable to assume that the inspector for the division would have permitted the premises to be operated as a motel and trailer park during the making of the required repairs. Further, the evidence shows that the letter which the division sent to defendant was merely a form letter which the division mails out as a compliance order, and that if the noncompliance is not too serious the owner may be given as many as 10 years to improve the situation; that when a nuisance or great hazard exists, immediate compliance is demanded; otherwise the district attorney is requested to file an action to abate the nuisance.

The evidence as presented by the parties to this action through their own testimony, is almost completely in conflict. Defendant maintained throughout her testimony that plaintiffs were fully advised of the lack of a permit; that they were informed on several occasions as to what work and repairs would have to be done on the premises before a permit to operate the motel and trailer park could be obtained; and that they entered upon the contract with a full knowledge and understanding of their obligations and of the requirements of the Division of Housing insofar as its permission to maintain the property as a motel and trailer park was concerned. On the other hand, plaintiffs' testimony is to the contrary. As heretofore stated, the evidence shows that defendant told plaintiffs that unless certain repairs and improvements were made, no one would be able to obtain a permit from the Division of Housing and that would include her (defendant). Her testimony finds additional support in the contract wherein it was provided that purchasers agreed to change and install electric wiring over the trailer hook-ups and to raise the electrical light wiring over the crossing to an elevation of 16 feet; change and install fuses and switch boxes and improve all open leads; and also that the plaintiffs were to improve the trailer hook-ups for sanitary purposes. There is also the testimony of Mr. Greene that he overheard a conversation between the defendant and plaintiffs wherein one of the plaintiffs asked the defendant what a permit would cost, and also that defendant stated to plaintiffs that certain improvements were required by the Division of Housing. The witness Harrigan also testified to a conversation between the plaintiffs and

defendant which took place while the parties were negotiating for the purchase and sale of the property and that he heard defendant state to plaintiffs that a permit would have to be obtained from the Division of Housing but that she had been advised by the division that she could continue to operate the premises providing the job of correcting the wiring and sewage defects was undertaken immediately and completed with all possible dispatch and the remaining defects corrected as time and funds permitted. He also testified that he heard defendant state to plaintiffs that one of the reasons she was selling the property at such a reduced price was the necessity of the repairs required by the inspector for the division. While the above testimony was also contradicted by the plaintiffs, it nevertheless supports the findings of the trial court. The findings negative any fraudulent representations and concealment of material facts by defendant relating to the contract in question, or the existence of mistake, or failure of consideration. There is also substantial evidence to show that the drainage area was not included in the contract but was to be covered by a separate lease at a rental of one dollar per year. There is also evidence that the down payment was reduced from $5,000 to $2,500 in order that plaintiffs would have money with which to improve the property. After plaintiffs had purchased the property they were told by a representative of the Division of Housing that they would have to make improvements if they were to continue to operate. This is the same thing they had been told by defendant. There is no evidence in the record that the division attempted to prevent plaintiffs from operating so long as they would make improvements on the property. Viewing the evidence in the light most favorable to the defendant (respondent) we feel that it substantially supports the findings and the judgment.

Since this case is one of fact only, there is no necessity for us to discuss the cases cited by appellants.

The judgment is affirmed.

Van Dyke, P. J., and Peek, J., concurred.